IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF IOWA
CEDAR RAPIDS DIVISION

BART Q. FRIEDERICK,

  Plaintiff,

vs.

CAROLYN W. COLVIN,
Commissioner of Social Security,

  Defendant.

No. C14-0013

RULING ON JUDICIAL REVIEW

## TABLE OF CONTENTS

I.    *INTRODUCTION* . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 2

II.   *PRINCIPLES OF REVIEW* . . . . . . . . . . . . . . . . . . . . . . . . . . . 2

III.  *FACTS* . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 4
      A.  *Friederick's Education and Employment Background* . . . . . . . . . . 4
      B.  *Administrative Hearing Testimony* . . . . . . . . . . . . . . . . . . . 4
          1.   *Friederick's Testimony* . . . . . . . . . . . . . . . . . . . . . 4
          2.   *Vocational Expert's Testimony* . . . . . . . . . . . . . . . . . 5
      C.  *Friederick's Medical History* . . . . . . . . . . . . . . . . . . . . . 6

IV.   *CONCLUSIONS OF LAW* . . . . . . . . . . . . . . . . . . . . . . . . . . 10
      A.  *ALJ's Disability Determination* . . . . . . . . . . . . . . . . . . . . 10
      B.  *Objections Raised By Claimant* . . . . . . . . . . . . . . . . . . . . 13
          1.   *Dr. Mathew's Opinions* . . . . . . . . . . . . . . . . . . . . 13
          2.   *Credibility Determination* . . . . . . . . . . . . . . . . . . 17

V.    *CONCLUSION* . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 21

VI.   *ORDER* . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 21

## I. INTRODUCTION

This matter comes before the Court on the Complaint (docket number 1) filed by Plaintiff Bart Q. Friederick on January 30, 2014, requesting judicial review of the Social Security Commissioner's decision to deny his application for Title II disability insurance benefits.[1] Friederick asks the Court to reverse the decision of the Social Security Commissioner ("Commissioner") and order the Commissioner to provide him disability insurance benefits. In the alternative, Friederick requests the Court to remand this matter for further proceedings.

## II. PRINCIPLES OF REVIEW

Title 42, United States Code, Section 405(g) provides that the Commissioner's final determination following an administrative hearing not to award disability insurance benefits is subject to judicial review. 42 U.S.C. § 405(g). 42 U.S.C. § 405(g) provides the Court with the power to: "[E]nter . . . a judgment affirming, modifying, or reversing the decision of the Commissioner . . . with or without remanding the cause for a rehearing." 42 U.S.C. § 405(g). "The findings of the Commissioner . . . as to any fact, if supported by substantial evidence, shall be conclusive . . ." *Id.*

The Court will "affirm the Commissioner's decision if supported by substantial evidence on the record as a whole." *Anderson v. Astrue*, 696 F.3d 790, 793 (8th Cir. 2012) (citation omitted). Substantial evidence is defined as "'less than a preponderance but . . . enough that a reasonable mind would find it adequate to support the conclusion.'" *Id.* (quoting *Jones v. Astrue*, 619 F.3d 963, 968 (8th Cir. 2010)); *see also Brock v. Astrue*, 674 F.3d 1062, 1063 (8th Cir. 2010) ("Substantial evidence is evidence that a reasonable person might accept as adequate to support a decision but is less than a preponderance.").

---

[1] On March 31, 2014, both parties consented to proceed before a magistrate judge in this matter pursuant to the provisions set forth in 28 U.S.C. § 636(c).

In determining whether the ALJ's decision meets this standard, the Court considers "all of the evidence that was before the ALJ, but it [does] not re-weigh the evidence." *Vester v. Barnhart*, 416 F.3d 886, 889 (8th Cir. 2005) (citation omitted). The Court not only considers the evidence which supports the ALJ's decision, but also the evidence that detracts from his or her decision. *Perks v. Astrue*, 687 F.3d 1086, 1091 (8th Cir. 2012); *see also Cox v. Astrue*, 495 F.3d 614, 617 (8th Cir. 2007) (Review of an ALJ's decision "extends beyond examining the record to find substantial evidence in support of the ALJ's decision; [the court must also] consider evidence in the record that fairly detracts from that decision."). In *Culbertson v. Shalala*, 30 F.3d 934, 939 (8th Cir. 1994), the Eighth Circuit Court of Appeals explained this standard as follows:

> This standard is 'something less than the weight of the evidence and it allows for the possibility of drawing two inconsistent conclusions, thus it embodies a zone of choice within which the [Commissioner] may decide to grant or deny benefits without being subject to reversal on appeal.'

*Id.* (quoting *Turley v. Sullivan*, 939 F.2d 524, 528 (8th Cir. 1991), in turn quoting *Bland v. Bowen*, 861 F.2d 533, 535 (8th Cir. 1988)). In *Buckner v. Astrue*, 646 F.3d 549 (8th Cir. 2011), the Eighth Circuit further explained that a court "'will not disturb the denial of benefits so long as the ALJ's decision falls within the available 'zone of choice.'" *Id.* at 556 (quoting *Bradley v. Astrue*, 528 F.3d 1113, 1115 (8th Cir. 2008)). "'An ALJ's decision is not outside that zone of choice simply because [a court] might have reached a different conclusion had [the court] been the initial finder of fact.'" *Id.* Therefore, "even if inconsistent conclusions may be drawn from the evidence, the agency's decision will be upheld if it is supported by substantial evidence on the record as a whole." *Guilliams v. Barnhart*, 393 F.3d 798, 801 (8th Cir. 2005) (citing *Chamberlain v. Shalala*, 47 F.3d 1489, 1493 (8th Cir. 1995)); *see also Wildman v. Astrue*, 596 F.3d 959, 964 (8th Cir. 2010) ("If substantial evidence supports the ALJ's decision, we will not reverse the decision merely because substantial evidence would have also supported a contrary

outcome, or because we would have decided differently."); *Moore v. Astrue*, 572 F.3d 520, 522 (8th Cir. 2009) ("'If there is substantial evidence to support the Commissioner's conclusion, we may not reverse even though there may also be substantial evidence to support the opposite conclusion.' *Clay v. Barnhart*, 417 F.3d 922, 928 (8th Cir. 2005).").

## III. FACTS

### A. Friederick's Education and Employment Background

Friederick was born in 1970. He is a high school graduate. While in school, he was enrolled in some special education classes. In the past, he worked as a construction worker.

### B. Administrative Hearing Testimony

#### 1. Friederick's Testimony

At the administrative hearing, Friederick testified that due to back pain he has difficulty walking more than one block, sitting more than 30 minutes, and standing more than 30 minutes. According to Friederick, while at home, he spends 90% of his day lying down because other positions are too painful for him. Friederick also testified that he does very little around the house. He stated he cannot make his bed, do any cleaning, or do any yard work. He indicated that he might "throw some dishes in the dishwasher, but, you know, I might throw two or three in there on the top rack and then, you know, I'm done. You know, I feel guilty, because I don't do stuff around the house[.]"[2] Friederick further testified that he receives treatment for depression. Specifically, he stated that his back pain and inability to do much at home, causes him to feel guilty for not helping to take care of his family and makes him feel worthless. He started treatment for depression after expressing a desire to kill himself.

---

[2] Administrative Record at 51-52.

4

## 2. *Vocational Expert's Testimony*

At the hearing, the ALJ provided vocational expert Vanessa May with a hypothetical for an individual who is capable of:

> performing [] light work . . . who can occasionally climb, balance, stoop, kneel, crouch and crawl, and . . . is capable of performing simple, routine tasks.

(Administrative Record at 69.) The vocational expert testified that under such limitations, Friederick could not perform his past relevant work. The vocational expert testified, however, that Friederick could perform the following jobs: (1) office helper, (2) cashier, and (3) laundry folder. The ALJ provided the vocational expert with a second hypothetical question:

> [C]onsider the second hypothetical person, the same person identified in hypothetical one, with the additional restrictions that this person is capable of performing sedentary work . . . and has the additional restriction to only occasional interactions with the public, coworkers and supervisors.

(Administrative Record at 70.) Under such circumstances, the vocational expert testified that Friederick could perform the following jobs: (1) document preparer, (2) addresser, and (3) sorter. Lastly, the ALJ provided the vocational expert with a third hypothetical where the individual in either hypothetical one or hypothetical two also "would need to recline, say, at least a third of the work day. By recline I mean, laying down, lying down either in bed or in some kind of recliner chair arrangement."[3] The vocational expert testified that under such limitations, Friederick would be precluded from competitive employment.

Friederick's attorney also questioned the vocational expert:

---

[3] Administrative Record at 70.

5

Q: If the hypothetical person needed to work at a slow pace up to a third of the workday, would they be competitively employable?

A: No.

Q: If the hypothetical person needed to take unscheduled work breaks, two or three per day, 20-30 minutes each, would an employer allow for that much [time] away from the workplace?

A: No.

Q: If the hypothetical person could not maintain attention for two hour segments, would they be competitively employable?

A: No.

Q: If the hypothetical person were going to miss more than three days of work a month, would they be competitively employable?

A: No.

(Administrative Record at 71-72.)

### C. Friederick's Medical History

On February 24, 2010, Friederick went to the Emergency Room at Mercy Medical Center in Cedar Rapids, Iowa. Friederick injured his back at work, attempting to pull out an air hose that was stuck. Friederick presented with significant back pain. He was diagnosed with a lumbar strain causing acute back pain. He was treated and released from the hospital, but returned to the Emergency Room shortly after leaving, as severe pain returned. He was admitted to the hospital due to intractable back pain. An MRI of Friederick's back showed a "significant" disc herniation at L3-L4, with "significant" pressure on the decending L4 nerve root. Back surgery was recommended as treatment. Friederick underwent back surgery on February 27, 2010.

On October 25, 2010, Friederick met with Amy K. Wenger, OTR/L, for a physical therapy evaluation following his back surgery. Wenger noted that Friederick's aggravating factors were: forward bending, prolonged sitting and standing, material handling, climbing, and twisting. Pain relief factors included: resting, changing posture,

medication, and massage. Friederick rated his pain level at 4 out of 10 at its best, and 5 out of 10 at its worst. His current restrictions included: 20-pound lifting limitation, no bending, no squatting, and no twisting. Upon examination, Wenger found that Friederick could occasionally climb and kneel, and rarely sit or stand. All of Friederick's spine range of motion tests were below normal levels. Wenger recommended that Friederick continue physical therapy to help decrease his pain and increase the range of motion in his back.

On January 6, 2011, Dr. Rene Staudacher, D.O., reviewed Friederick's medical records and provided Disability Determination Services ("DDS") with a physical residual functional capacity ("RFC") assessment for Friederick. Dr. Staudacher determined that Friederick could: (1) occasionally lift and/or carry 20 pounds, (2) frequently lift and/or carry 10 pounds, (3) stand and/or walk with normal breaks for a total of about six hours in an eight-hour workday, (4) sit with normal breaks for a total of about six hours in an eight-hour workday, and (5) push and/or pull without limitations. Dr. Staudacher also determined that Friederick could occasionally climb, balance, stoop, kneel, crouch, and crawl. Dr. Staudacher found no manipulative, visual, communicative, or environmental limitations. Dr. Staudacher concluded that:

> [Friederick's] allegations are mostly credible given his [medically determinable impairment]. While he would not currently be capable of heavy lifting that he had previously done in construction, [physical therapy] notes indicate that [he] continues to improve and he would currently be capable as outlined.

(Administrative Record at 390.)

On April 27, 2011, Dr. Lon Olsen, Ph.D., reviewed Friederick's medical records and provided DDS with a Psychiatric Review Technique and mental RFC assessment for Friederick. On the Psychiatric Review Technique assessment, Dr. Olsen diagnosed Friederick with chronic major depressive disorder and panic disorder. Dr. Olsen determined that Friederick had the following limitations: mild restriction of activities of

daily living, mild difficulties in maintaining social functioning, and moderate difficulties in maintaining concentration, persistence, or pace. On the mental RFC assessment, Dr. Olsen determined that Friederick was moderately limited in his ability to: understand and remember detailed instructions, carry out detailed instructions, maintain attention and concentration for extended periods, and respond appropriately to changes in the work setting. Dr. Olsen concluded that:

> [Friederick] lives with his family. He sometimes forgets to take medication or forgets when he took it. His wife encourages him to be as active as possible. He maintains social contacts, but is irritable, short tempered and depressed when interacting with his family. He is forgetful and distractable. His ability to follow spoken instructions depends upon how many steps they involve. He responds poorly to change in routine. He attributes his remaining limitations to his physical condition, not his mental condition.

> [Friederick's] allegations about his functional limitations are credible and his presentation is consistent. He performs a wide range of daily activities, however, and attributes most of his limitations to his physical condition. He would be capable of 3- and 4-step activities that do not require intense concentration. He will need some support when adjusting to changes in routine.

(Administrative Record at 442.)

On August 23, 2011, at the request of Friederick's attorney, Dr. Stanley Mathew, M.D., Friederick's treating physician, filled out a "Pain-Physical Residual Functional Capacity Questionnaire" for Friederick. Dr. Mathew diagnosed Friederick with chronic low back pain, post surgical intervention. Dr. Mathew noted that Friederick "has chronic low back pain radiating down both legs."[4] The left leg is more painful than the right leg. Dr. Mathew rated Friederick's prognosis as "fair." Dr. Mathew identified the following

---

[4] Administrative Record at 461.

symptoms for Friederick: tenderness to the lumbar spine, pain with range of motion, pain with prolonged sitting and standing, and weakness in his left leg. Dr. Mathew also opined that Friederick's pain is exaccerbated by depression and anxiety. According to Dr. Mathew, Friederick's experience of pain is severe enough to "frequently" interfere with the attention and concentration needed to perform even simple work tasks. Dr. Mathew found that Friederick is capable of: (1) walking one block; (2) sitting and standing for 20 minutes before needing to change position; (3) sitting and standing about 2 hours in an eight-hour workday; (4) occasionally lifting less than 10 pounds; (5) rarely lifting 10 pounds; (6) never lifting 20 pounds or 50 pounds. Dr. Mathew also determined that Friederick could rarely twist, stoop, crouch, or climb. Dr. Mathew further opined that Friederick would need 3 unscheduled breaks during an eight-hour workday to rest and lie down, for approximately 1 hour each time. Lastly, Dr. Mathew indicated that Friederick would miss about four days per month from work due to his impairments or treatment for his impairments.

On January 31, 2012, Friederick was referred by Dr. Mathew to Dr. Jennifer Swaim, Ph.D., for a psychological evaluation and pain management. In reviewing Friederick's medical history, Dr. Swaim noted that:

> Prior to his injury and associated pain condition, there is no psychiatric history of significant symptomatology. At this point, however, he is having difficulty coping with this pain and life circumstance. This has been evident since shortly after his injury. Primary evident emotional symptoms are anxiety and moderate severity depressive symptoms, with limited relief from his current panel of psychotropic medications. The medications are helping attenuate suicidal ideation, which was more prevalent shortly after his injury.

(Administrative Record at 520.) Upon examination, Dr. Swaim diagnosed Friederick with "psychological factors affecting medical conditions" and major depressive disorder,

secondary to chronic pain condition.    Dr. Swaim recommended pain management psychotherapy as treatment.

On March 31, 2012, at the request of Friederick's attorney, Dr. Mathew filled out a second pain questionnaire for Friederick.   Dr. Mathew's opinions were largely the same as his opinions in the August 2011 questionnaire.    Dr. Mathew, again, diagnosed Friederick with chronic low back pain, characterized by numbness and tingling down his legs.  Dr. Mathew also noted that Friederick's pain is affected by depression.  Dr. Mathew found that Friederick's pain is "aggravated" by activity and "better" with rest. Dr. Mathew found that Friederick's ability to walk, sit, and stand had slightly worsened since August 2011.   Dr. Mathew opined that Friederick could walk 1/2 a block, and sit and stand for less than two hours in an eight-hour workday.   Unlike in 2011, Dr. Mathew determined that Friederick would only need one unscheduled rest break during an eight-hour work period, lasting only 30 minutes.   However, he would still need to lie down during the unscheduled rest break.    Dr. Mathew also found that Friederick could occasionally lift 10 pounds or less.  Dr. Mathew further found that Friederick should never crouch or climb ladders.  Dr. Mathew concluded that Friederick suffers from "severe pain exacerbated by activity."[5]

## IV.  CONCLUSIONS OF LAW

### A.  ALJ's Disability Determination

The ALJ determined that Friederick is not disabled.  In making this determination, the ALJ was required to complete the five-step sequential test provided in the social security regulations.  *See* 20 C.F.R. § 404.1520(a)-(g); *Bowen v. Yuckert*, 482 U.S. 137, 140-42 (1987); *McCoy v. Astrue*, 648 F.3d 605, 611 (8th Cir. 2011); *Page v. Astrue*, 484 F.3d 1040, 1042 (8th Cir. 2007).  The five steps an ALJ must consider are:

---

[5] Administrative Record at 509.

(1) whether the claimant is gainfully employed, (2) whether the claimant has a severe impairment, (3) whether the impairment meets the criteria of any Social Security Income listings, (4) whether the impairment prevents the claimant from performing past relevant work, and (5) whether the impairment necessarily prevents the claimant from doing any other work.

*Goff v. Barnhart*, 421 F.3d 785, 790 (8th Cir. 2005) (citing *Eichelberger*, 390 F.3d at 590); *Perks*, 687 F.3d at 1091-92 (discussing the five-step sequential evaluation process); *Medhaug v. Astrue*, 578 F.3d 805, 813-14 (8th Cir. 2009) (same); *see also* 20 C.F.R. § 404.1520(a)-(g). "If a claimant fails to meet the criteria at any step in the evaluation of disability, the process ends and the claimant is determined to be not disabled." *Pelkey v. Barnhart*, 433 F.3d 575, 577 (8th Cir. 2006) (citing *Goff*, 421 F.3d at 790, in turn quoting *Eichelberger*, 390 F.3d at 590-91).

In considering the steps in the five-step process, the ALJ:

first determines if the claimant engaged in substantial gainful activity. If so, the claimant is not disabled. Second, the ALJ determines whether the claimant has a severe medical impairment that has lasted, or is expected to last, at least 12 months. Third, the ALJ considers the severity of the impairment, specifically whether it meets or equals one of the listed impairments. If the ALJ finds a severe impairment that meets the duration requirement, and meets or equals a listed impairment, then the claimant is disabled. However, the fourth step asks whether the claimant has the residual functional capacity to do past relevant work. If so, the claimant is not disabled. Fifth, the ALJ determines whether the claimant can perform other jobs in the economy. If so, the claimant is not disabled.

*Kluesner v. Astrue*, 607 F.3d 533, 537 (8th Cir. 2010). At the fourth step, the claimant "bears the burden of demonstrating an inability to return to [his] or her past relevant work." *Pate-Fires v. Astrue*, 564 F.3d 935, 942 (8th Cir. 2009) (citing *Steed v. Astrue*, 524 F.3d 872, 875 n.3 (8th Cir. 2008)). If the claimant meets this burden, the burden

shifts to the Commissioner at step five to demonstrate that "given [the claimant's] RFC [(residual functional capacity)], age, education, and work experience, there [are] a significant number of other jobs in the national economy that [the claimant] could perform." *Brock*, 674 F.3d at 1064 (citing *Ellis v. Barnhart*, 392 F.3d 988, 993 (8th Cir. 2005)). The RFC is the most an individual can do despite the combined effect of all of his or her credible limitations. 20 C.F.R. § 404.1545. The ALJ bears the responsibility for determining "'a claimant's RFC based on all the relevant evidence including the medical records, observations of treating physicians and others, and an individual's own description of his [or her] limitations.'" *Boettcher v. Astrue*, 652 F.3d 860, 867 (8th Cir. 2011) (quoting *Moore*, 572 F.3d at 523); 20 C.F.R. § 404.1545.

The ALJ applied the first step of the analysis and determined that Friederick had not engaged in substantial gainful activity since August 8, 2010. At the second step, the ALJ concluded from the medical evidence that Friederick has the following severe impairments: obesity, degenerative disc disease of the lumbar spine, status post lumbar laminectomy, major depression, and panic disorder. At the third step, the ALJ found that Friederick did not have an impairment or combination of impairments listed in 20 C.F.R. Pt. 404, Subpt. P, App. 1. At the fourth step, the ALJ determined Friederick's RFC as follows:

> [Friederick] has the residual functional capacity to perform sedentary work . . . except: that his ability to climb, balance, stoop, crouch and crawl would be limited to occasional. He is further limited to simple, routine, repetitive work on a job where he would have just occasional interaction with coworkers, supervisors and the public.

(Administrative Record at 20.) Also at the fourth step, the ALJ determined that Friederick was unable to perform any of his past relevant work. At the fifth step, the ALJ determined that based on his age, education, previous work experience, and RFC, Friederick could work at jobs that exist in significant numbers in the national economy. Therefore, the ALJ concluded that Friederick was not disabled.

### B. Objections Raised By Claimant

Friederick argues that the ALJ erred in two respects. First, Friederick argues that the ALJ failed to properly evaluate the opinions of his treating physician, Dr. Mathew. Second, Friederick argues that the ALJ failed to properly evaluate his subjective allegations of pain and disability.

### 1.  Dr. Mathew's Opinions

Friederick argues that the ALJ failed to properly evaluate the opinions of his treating physician, Dr. Mathew. Friederick maintains that the ALJ's reasons for discounting the opinions of Dr. Mathew are not supported by substantial evidence in the record. Additionally, Friederick argues that the ALJ failed to evaluate Dr. Mathew's opinions in light of Dr. Swaim's diagnosis and treatment of his mental impairments, and the affect his mental impairments have on his physical impairments. Friederick concludes that this matter should be remanded for further consideration of the opinions of Dr. Mathew.

The ALJ is required to "assess the record as a whole to determine whether treating physicians' opinions are inconsistent with substantial evidence of the record." *Travis v. Astrue*, 477 F.3d 1037, 1041 (8th Cir. 2007) (citing 20 C.F.R. § 404.1527(d)(2)). "Although a treating physician's opinion is entitled to great weight, it does not automatically control or obviate the need to evaluate the record as a whole." *Hogan v. Apfel*, 239 F.3d 958, 961 (8th Cir. 2001) (citing *Prosch v Apfel*, 201 F.3d 1010, 1013 (8th Cir. 2000)). "The ALJ may discount or disregard such an opinion if other medical assessments are supported by superior medical evidence, or if the treating physician has offered inconsistent opinions." *Id.*; *see also Travis*, 477 F.3d at 1041 ("A physician's statement that is 'not supported by diagnoses based on objective evidence' will not support a finding of disability. *Edwards v. Barnhart*, 314 F.3d 964, 967 (8th Cir. 2003). If the doctor's opinion is inconsistent with or contrary to the medical evidence as a whole, the

ALJ can accord it less weight.'*Id..*); *Strongson v. Barnhart,* 361 F.3d 1066, 1070 (8th Cir. 2004) (an ALJ does not need to give controlling weight to a physician's RFC if it is inconsistent with other substantial evidence in the record); *Cabrnoch v. Bowen,* 881 F.2d 561, 564 (8th Cir. 1989) (the resolution of conflicts of opinion among various treating and examining physicians is the proper function of an ALJ). The ALJ may discount or disregard a treating physician's opinion if other medical assessments are supported by superior medical evidence, or if the treating physician has offered inconsistent opinions. *Hamilton v. Astrue,* 518 F.3d 607, 609 (8th Cir. 2008).

Also, the regulations require an ALJ to give "good reasons" for assigning weight to statements provided by a treating physician. *See* 20 C.F.R. § 404.1527(d)(2). An ALJ is required to evaluate every medical opinion he or she receives from a claimant. 20 C.F.R. § 404.1527(d). If the medical opinion from a treating source is not given controlling weight, then the ALJ considers the following factors for determining the weight to be given to all medical opinions: "(1) examining relationship, (2) treating relationship, (3) supportability, (4) consistency, (5) specialization, and (6) other factors." *Wiese,* 552 F.3d at 731 (citing 20 C.F.R. §§ 404.1527(c)). "'It is the ALJ's function to resolve conflicts among the opinions of various treating and examining physicians. The ALJ may reject the conclusions of any medical expert, whether hired by the claimant or the government, if they are inconsistent with the record as a whole.'" *Wagner,* 499 F.3d at 848 (quoting *Pearsall v. Massanari,* 274 F.3d 1211, 1219 (8th Cir. 2001)). The decision must contain specific reasons for the weight given to the treating source's medical opinion, supported by evidence in the case record, and must be sufficiently specific to make clear to any subsequent reviewers the weight the adjudicator gave to the treating source's medical opinion and the reasons for that weight. SSR *96-2P,* 1996 WL 374188 (1996).

In his decision, the ALJ addressed Dr. Mathew's opinions as follows:

> As for opinion evidence, Dr. Mathew has been [Friederick's] pain management physician (spine clinic) since January 2011.

14

Reportedly, he has been seeing [Friederick] on a monthly basis for his chronic low back pain. In Exhibit 19F, dated in March 2012, he opined that [Friederick's] ability to work was reduced below the level necessary for sustained activities of even a sedentary nature, i.e. sit or stand/walk less than 2 hours each in a workday; sit 30 minutes maximum, unable to perform simple tasks frequently. The undersigned however cannot accept the level of limitations as it is not supported by the doctor's own findings or the rest of the objective record as a whole.

April 11, 2011, [Friederick] had nerve conduction studies ordered by Dr. Mathew to assess back pain radiating into both of []his legs. The test results were considered normal. In the follow up with [Friederick] two days later, [he] showed subjective pain with limited range of back motion but manual muscle testing of the lower extremities indicated adequate strength at 4+/5 and his straight leg raising test was negative. He did not show significant neurological findings. He was treated with a sacroiliac joint injection followed by a myofascial release. May 13, 2011, [Friederick] said that he was able to walk up to 2 blocks independently and he admitted that his pain medicine was "moderately" helping.

Findings on subsequent visits to Dr. Mathew through July 2011 remained about the same for [Friederick] except passive range of his back flexion was just mildly impaired at 80 degrees. On the other hand, [Friederick] was still assessed significant physical limitations on a subjectively [(sic)] basis purportedly increased by mental reasons. August 2011, [Friederick] was independent in ambulation and in all [activities of daily living] essentially on the basis of the same physical findings. Medical center emergency room notes at October and December 2011 visits were for acute increases in low back pain but neurological status remained intact. Those findings suggest a capacity for walking more than two blocks.

(Administrative Record at 23.) The ALJ also addressed Friederick's psychological health and his treatment with Dr. Swaim:

15

As to [Friederick's] mental status, the undersigned finds ample evidence in the records to conclude he is able to do simple, unskilled work, provided that he would not be subjected to interaction with others more than occasionally. As the State agency (DDS) psychological consultant noted in April 2011, he had a history of treatment for depression by his primary care medical source. He advised Dr. Quinn in June 2010 that his antidepressant was working well. . . . Objectively, [in September 2010,] his mental status remained normal; oriented to time, place and person, well developed, well nourished, no acute distress, no psychomotor retardation or agitation, no recurrent suicidal ideation.

[Friederick] saw another primary care provider in February 2011, at which time, he was feeling better with respect to depression. He showed normal grooming, his affect was normal and he had no impairment of thought content. He was later sent for a consultative psychological evaluation by the DDS in April 2011. . . . Clinically, he presented no evidence of a thought disorder or perceptual abnormalities, even though he endorsed significant symptoms during the evaluation process. He did show a marked impairment in the area of working memory yet he had no difficulty with immediate or delayed memory. The working memory problem was enough to present an impact on his ability to remember and carryout complex, detailed or lengthy instructions. However, he had no difficulty remembering and carrying out simple instructions at a reasonable pace. . . .

Exhibit 20 is a compilation of treatment and progress notes from the current attending psychologist, Jennifer Swaim, PhD dated from January to August 2012. When she first saw [Friederick] on January 26, 2012, he was assessed major depression but this was secondary to chronic pain. . . . The psychologist listed positive findings of depression, anhedonia, irritability, guilt and possibly some impaired concentration. These were obviously not at a level to compromise other aspects of his mental status as he showed an appropriate affect, alertness, full orientation, normal appearance, normal

behavior, normal speech, and good insight and judgment. In any event, the treatment process/therapy at least stabilized his mental issues so he has not needed more aggressive care such as inpatient hospitalization.

(Administrative Record at 24.)

Having reviewed the entire record, the Court finds the ALJ properly considered and addressed the opinion evidence provided by Dr. Mathew. In determining whether Friederick is disabled, the ALJ also properly considered and addressed Friederick's psychological health, including his treatment by Dr. Swaim. Furthermore, the Court finds the ALJ provided "good reasons" for rejecting the opinions of Dr. Mathew. *See Strongson*, 361 F.3d at 1070; *Edwards*, 314 F.3d at 967. Accordingly, even if inconsistent conclusions could be drawn on this issue, the court upholds the conclusions of the ALJ because they are supported by substantial evidence on the record as a whole. *Guilliams*, 393 F.3d at 301.

### 2. Credibility Determination

Friederick argues that the ALJ failed to properly evaluate his subjective allegations of pain and disability. Friederick maintains that the ALJ's credibility determination is not supported by substantial evidence. The Commissioner argues that the ALJ properly considered Friederick's testimony, and properly evaluated the credibility of his subjective complaints.

When assessing a claimant's credibility, "[t]he [ALJ] must give full consideration to all the evidence presented relating to subjective complaints, including the claimant's prior work record, and observations by third parties and treating and examining physicians relating to such matters as: (1) the claimant's daily activities; (2) the duration, frequency, and intensity of the pain; (3) precipitating and aggravating factors; (4) dosage, effectiveness and side effects of medication; [and] (5) functional restrictions." *Polaski v. Heckler*, 739 F.2d 1320, 1322 (8th Cir. 1984). An ALJ should also consider a "a

17

claimant's work history and the absence of objective medical evidence to support the claimant's complaints[.]" *Finch v. Astrue*, 547 F.3d 933, 935 (8th Cir. 2008) (citing *Wheeler v. Apfel*, 224 F.3d 891, 895 (8th Cir. 2000)). The ALJ, however, may not disregard a claimant's subjective complaints "'solely because the objective medical evidence does not fully support them.'" *Renstrom v. Astrue*, 680 F.3d 1057, 1066 (8th Cir. 2012) (quoting *Wiese v. Astrue*, 552 F.3d 728, 733 (8th Cir. 2009)).

Instead, an ALJ may discount a claimant's subjective complaints "if there are inconsistencies in the record as a whole." *Wildman*, 596 F.3d at 968; *see also Finch*, 547 F.3d at 935 (same); *Lowe v. Apfel*, 226 F.3d 969, 972 (8th Cir. 2000) ("The ALJ may not discount a claimant's complaints solely because they are not fully supported by the objective medical evidence, but the complaints may be discounted based on inconsistencies in the record as a whole."). If an ALJ discounts a claimant's subjective complaints, he or she is required to "'make an express credibility determination, detailing the reasons for discounting the testimony, setting forth the inconsistencies, and discussing the Polaski factors.'" *Renstrom*, 680 F.3d at 1066 (quoting *Dipple v. Astrue*, 601 F.3d 833, 837 (8th Cir. 2010)); *see also Ford*, 518 F.3d at 982 (An ALJ is "required to 'detail the reasons for discrediting the testimony and set forth the inconsistencies found.' *Lewis v. Barnhart*, 353 F.3d 642, 647 (8th Cir. 2003)."). Where an ALJ seriously considers, but for good reason explicitly discredits a claimant's subjective complaints, the Court will not disturb the ALJ's credibility determination. *Johnson v. Apfel*, 240 F.3d 1145, 1148 (8th Cir. 2001) (citing *Pena v. Chater*, 76 F.3d 906, 908 (8th Cir. 1996)); *see also Schultz v. Astrue*, 479 F.3d 979, 983 (8th Cir. 2007) (providing that deference is given to an ALJ when the ALJ explicitly discredits a claimant's testimony and gives good reason for doing so); *Gregg v. Barnhart*, 354 F.3d 710, 714 (8th Cir. 2003) ("If an ALJ explicitly discredits the claimant's testimony and gives good reasons for doing so, we will normally defer to the ALJ's credibility determination."). "'The credibility of a claimant's subjective

testimony is primarily for the ALJ to decide, not the courts.'" *Vossen v. Astrue*, 612 F.3d 1011, 1017 (8th Cir. 2010) (quoting *Pearsall v. Massanari*, 274 F.3d 1211, 1218 (8th Cir. 2001)).

In his decision, the ALJ addressed Friederick's subjective allegations of disability as follows:

> In hearing testimony, [Friederick] claimed that nothing changed since his surgery; he has back pain radiating into his legs. Yet, the medical reports show that the treatment process since the surgery had remained entirely conservative in spite of his allege [(sic)] pain and functional limitations. He indicated he was treated three times with epidurals but no more were scheduled. He noted that he is on Workers Compensation without a settlement because he continues to receive treatment. However, he also said that he was not getting physical therapy anymore apparently because he reached maximum medical improvement. He declined to admit to doing moderate lifting during the physical therapy and noted that he now has to force himself to do things in daily activities. He mentioned a cane, but then he was evasive about using it, he was able to walk from the car to the hearing room without it. He acknowledged that his function report suggested that he could lift 20 pounds and walk a mile but he then said that he still had walking problems. When he does go for a walk, he doesn't use a cane. Otherwise, he reported that he was maintaining a semi-invalid status, not doing much of anything, spending most of his time alternating between the recliner and the floor, watching TV and sleeping. He blamed pain killers for making him sleep 12 hours a day yet he continues to drive to his doctor's appointments a mile or so from home and is active enough to attend sporting events that his kids are involved in.

> After careful consideration of the evidence, the undersigned finds that [Friederick's] medically determinable impairments could reasonably be expected to cause the alleged symptoms; however, [his] statements concerning the intensity, persistence and limiting effects of these symptoms are not credible to the

extent they are inconsistent with the above residual functional capacity assessment.

Simply stated, the objective medical evidence and [Friederick's] treatment record since the back surgery are not compatible with a high degree of pain and functional limitations. For example, primary care treatment notes in September and October 2010 indicate that [Friederick's] gait remained normal. He was in a motor vehicle accident on October 26, 2010, and was experiencing some neck pain with decreased neck flexion. However, he showed negative clinical signs of increased difficulties as he had normal grip strength, normal biceps reflexes, and normal gait and stance. His neck x-rays were normal. . . . The treating source pointed out by examination on November 30, 2010 that he gave the appearance of being uncomfortable but he was "in no acute distress."

At a physical therapy appointment in December 2010, [Friederick] was lifting 50 pounds overhead and continued to show progress with his physical therapy. He was able to walk on the treadmill at a 12.5 level, apparently 9 minutes. In the same month, he submitted a pain form to Social Security where he denied being able to do much by way of household chores or outside work but he also wrote that he could "lift; 65 [pounds] short carrying; 50 [pounds] overhead, 55 [pounds] waist to knee with pain and moderate fatigue following." He then went on to described [(sic)] marked limitations for sitting, standing and walking but he was able to continue taking his kids to and from school and "possibly run errands if necessary."

January 2011, [Friederick] told a primary care source that he was having back pain that he attributed to more aggressive physical activity. He had been "moving snow and then at night had a lot of pain afterwards." He said that his energy was good in spite of getting less sleep. Appearance wise, he was "well-nourished," in "no acute distress." He continued to show normal gait and stance.

(Administrative Record at 21-23.)

It is clear from the ALJ's decision that he thoroughly considered and discussed Friederick's medical history, treatment history, functional restrictions, effectiveness of medications, and activities of daily living in making his credibility determination for Friederick. Thus, having reviewed the entire record, the Court finds that the ALJ adequately considered and addressed the *Polaski* factors in determining that Friederick's subjective allegations of disability were not credible. *See Johnson*, 240 F.3d at 1148; *see also Goff*, 421 F.3d at 791 (an ALJ is not required to explicitly discuss each *Polaski* factor, it is sufficient if the ALJ acknowledges and considers those factors before discounting a claimant's subjective complaints); *Tucker v. Barnhart*, 363 F.3d 781, 783 (8th Cir. 2004) ("The ALJ is not required to discuss each *Polaski* factor as long as the analytical framework is recognized and considered. *Brown v. Chater*, 87 F.3d 963, 966 (8th Cir. 1996)."). Accordingly, because the ALJ seriously considered, but for good reasons explicitly discredited Friederick's subjective complaints, the Court will not disturb the ALJ's credibility determination. *See Johnson*, 240 F.3d at 1148; *Willcockson*, 540 F.3d at 880-81. Even if inconsistent conclusions could be drawn on this issue, the Court upholds the conclusions of the ALJ because they are supported by substantial evidence on the record as a whole. *Guilliams*, 393 F.3d at 801.

## V. CONCLUSION

The Court finds that the ALJ properly considered and addressed the medical evidence and opinions in the record, including the opinions of Dr. Mathew. The Court also finds that the ALJ properly determined Friederick's credibility with regard to his subjective complaints of pain and disability. Accordingly, the Court determines that the ALJ's decision is supported by substantial evidence and shall be affirmed.

## VI. ORDER

1.    The final decision of the Commissioner of Social Security is **AFFIRMED**;

2. Plaintiff's Complaint (docket number 1) is **DISMISSED** with prejudice; and

3. The Clerk of Court is directed to enter judgment accordingly.

DATED this 26th day of _November_, 2014.

JON STUART SCOLES
CHIEF MAGISTRATE JUDGE
NORTHERN DISTRICT OF IOWA